UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VINCENT HARRIS, | ) | 1:06-CV-01571 AWI JMD HC |
|         Petitioner, | ) | |
|    v. | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| K. MENDOZA-POWERS, | ) | |
|         Respondent. | ) | |

Petitioner Vincent Harris ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of California Department of Corrections and Rehabilitation pursuant to a judgment of the San Francisco County Superior Court. (Pet. at 2; Answer at 1.) Petitioner was convicted of second degree murder (Cal. Penal Code § 187) with a firearm use enhancement (Cal. Penal Code § 12022.5). (Pet. at 2). Petitioner is serving a sentence of seventeen years-to-life.

On August 25, 2005, Petitioner appeared before the California Board of Parole Hearings[1] ("BPH" or "Board") for a parole consideration hearing. The Board denied Petitioner parole.

On December 16, 2005, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court challenging the BPH's decision. (Answer at 2). The California Supreme Court summarily denied the petition on September 13, 2006. (Pet. Ex. L).

On October 23, 2006, Petitioner filed the instant federal petition for writ of habeas corpus with the Northern District of California. (Pet. at 1). On October 26, 2006, the petition was

---

[1] The BPH was at that time known as the Board of Prison Terms.

transferred to this Court, pursuant to 28 U.S.C. § 2241(d). The petition raises two grounds for relief. Firstly, Petitioner alleges that his right to due process of the law was violated by the Board's denial of parole since the Board's decision was unsupported by "some evidence." Secondly, Petitioner alleges that he has been denied equal protection of the law since other similarly situated prisoners have been released.

On July 12, 2007, Respondent filed an answer to the petition.

On July 24, 2007, Petitioner filed a traverse to Respondent's answer.

**FACTUAL BACKGROUND**[2]

On May 10, 1985 23-year old [Petitioner] shot and killed 22-year old Damon Rainey following a dispute over ten dollars worth of marijuana. On the night before the murder, Estelle Woodruff sold a ten dollar bag of marijuana to Mr. Rainey. The next day Mr. Rainey argued with Miss Woodruff about the drugs because he felt she had shorted him. Miss Woodruff eventually walked away from Mr. Rainey. Miss Woodruff's sister then approached Mr. Rainey, and the two got in to a shouting match. She left, and returned five minutes later with her boyfriend, [Petitioner]. An argument ensued. [Petitioner] took out a .25 caliber pistol and fired two shots at Mr. Rainey. According to probation officer report, Mr. Rainey ran behind a parked car after the first shot, and [Petitioner] then shot him a second time. Mr. Rainey died soon thereafter from gunshot wounds to his chest. Eight day later [Petitioner] surrendered to police.

**DISCUSSION**

**I.   Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner's underlying conviction arose in the Los Angeles County Superior Court, the case was properly transferred to the Eastern District of California pursuant to 28 U.S.C. § 2241. Accordingly, the Court has jurisdiction over the action.

---

[2] The facts are derived from the record of Petitioner's parole consideration hearing. (Pet. Ex. J at 40-41).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

## II.   Standard of Review

### A.   AEDPA Standard of Review

While Petitioner is not challenging the underlying state court conviction, Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'" (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004)).

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

**B.    Standard Governing Parole Release Determinations**

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty

or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, where a state's statutory scheme for parole contains mandatory language, the presumption exist "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons, 505 F.3d at 850; *see* McQuillion, 306 F.3d at 903; *see also* Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Even a prisoner who has not yet been granted a parole date has a constitutionally protected liberty interest in a parole date. Sass, 461 F.3d at 1123.

  Notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all of the due process protections of an adversarial proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); *see also* Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections as demanded by the particular situations). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is entitled to receive advance written notice of a hearing. Pedro, 825 F.2d at 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." Greenholtz, 442 U.S. at 16.

  "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" Sass, 461

1  F.3d at 1128 (citations omitted).  The Ninth Circuit has held that the same standard of "some
2  evidence" that applies to the revocation of good time also extends to parole determinations.  <u>Irons</u>,
3  505 F.3d at 851.  The "some evidence" standard as applied to parole determinations is clearly
4  established Federal law, pursuant to the decisions of the Supreme Court.  <u>Id</u>.; <u>Sass</u>, 461 F.3d at
5  1128-1129.  This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest
6  without imposing undue administrative burdens or threatening institutional interests.  <u>Superintendent</u>
7  <u>v. Hill</u>, 472 U.S. 445, 455 (1985).  In assessing "whether a state parole board's suitability
8  determination was supported by 'some evidence' in a habeas case, our analysis is framed by the
9  statutes and regulations governing parole suitability determinations in the relevant state."  <u>Irons</u>, 505
10 F.3d at 851.  Consequently, the Court must look to California law and review the record.  However,
11 in reviewing the record and determining whether the "some evidence" standard is met, the Court
12 need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the
13 evidence.  <u>Sass</u>, 461 F.3d at 1128 (citing <u>Hill</u>, 472 U.S. at 455-456).  Rather, the relevant inquiry is
14 whether there is any evidence in the record that could support the BPH's decision.  <u>Sass</u>, 461 F.3d at
15 1128.

16      California law provides that after an eligible life prisoner has served the minimum term of
17 confinement required by statute, the BPH "shall set a release date unless it determines that the
18 gravity of the current convicted offense or offenses, or the timing and gravity of current or past
19 convicted offense or offenses, is such that consideration of the public safety requires a more lengthy
20 period of incarceration for" the prisoner.  Cal. Penal Code § 3041(b).  "[I]f in the judgment of the
21 panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the
22 prisoner must be found unsuitable and denied parole.  Cal. Code Regs., tit. 15, § 2402(a); *see* <u>In re</u>
23 <u>Dannenberg</u>, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005).  The BPH decides whether a prisoner is too
24 dangerous to be suitable for parole by applying factors set forth in the California Code of
25 Regulations.  *See* 15 Cal. Code Regs., tit. 15 § 2402; <u>Irons</u>, 505 F.3d at 851-852; <u>Biggs</u>, 334 F.3d at
26 915-916.  The regulation's criteria states that:

27     All relevant, reliable information available to the panel shall be considered in
    determining suitability for parole.  Such information shall include the circumstances
28     of the prisoner's social history; past and present mental state; past criminal history,
    including involvement in other criminal misconduct which is reliably documented;

the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs., tit. 15, § 2402(b)

Factors supporting a finding of unsuitability for parole include (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); also In re Shaputis, 82 Cal.Rptr.3d 213, 225 n. 14 (Cal. 2008) (holding that "some evidence" standard was met where Petitioner failed to gain insight into his previous violent behavior and to take responsibility for the commitment offense).

Furthermore, the California Supreme Court recently stated, "the Board or Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such a reliance *only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." In re Lawrence, 82 Cal.Rptr.3d 169, 198 (Cal. 2008) (holding that the relevant inquiry for a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the BPH's factual findings).

### III.  Review of Petitioner's Claims

#### A.  Ground One

Petitioner first contends that his right to due process of the law was violated by the Board's decision since the Board's decision was unsupported by "some evidence."[3] Petitioner specifically

---

[3] Petitioner does not contend, nor would the record support, that he was deprived of other due process rights afforded a prisoner at a parole hearing–such as advance written notice of the hearing, an opportunity to be heard, and a statement of the reasons why the Board denied parole. See Pedro, 825 F.2d at 1399; Greenholtz, 442 U.S. at 16. Consequently, Petitioner's due process claim, and this decision, centers around whether "some evidence" supported the Board's finding that Petitioner posed an unreasonable risk of danger to the public safety.

alleges that the "some evidence" standard cannot be met by the Board's reliance on Petitioner's pre-commitment arrest history, the circumstances of the commitment offense, and the mis-characterization of post-commitment factors. (Pet. at 6). Furthermore, Petitioner alleges that the Board intentionally misconstrued positive post-commitment factors, such as the psychiatrist report by Dr. Walker and Petitioner's participation in self-help or therapy programs, as factors against granting parole.

Petitioner raised these claims in a petition for writ of habeas corpus before the California Supreme Court. The California Supreme Court issued a summary denial of Petitioner's application. As a result of the unexplained rejection, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Despite Respondent's contention that the "some evidence" standard is not applicable to parole determination hearings, the Ninth Circuit has consistently applied this standard to parole determinations. See Irons, 505 F.3d at 851; see also Sass, 461 F.3d at 1128-1129. Thus, the dispositive inquiry before this Court is whether there was some evidence to support the BPH's determination that Petitioner posed a current unreasonable risk of danger to the public safety. After reviewing the record, this Court concludes that Petitioner received all the process due to him under the governing law and that the Board's decision was supported by "some evidence." See Sass, 461 F.3d at 1129.

Here, the BPH's conclusion rested on several factors: 1) the circumstances of the commitment offense; 2) Petitioner's inconsistent account of the crime; 3) Petitioner's pre-commitment history of assaultive behavior; 4) the psychological report dated on March 2004 by Dr. Walker stating that Petitioner posed a low to moderately-low risk of a violent offense if released; 5) Petitioner's gains were recent; and 6) insufficient participation in self-help or therapy programs. (Pet. Ex. J at 72-76). Thus, the BPH did rely on certain immutable factors–such as the circumstances of the commitment offense and Petitioner pre-arrest assaultive behavior–in reaching its decision. However, California regulations permit the Board to consider these factors in their decision. See Cal. Code Regs., tit. 15, §§ 2402(c)(1) and (2). The BPH found that the commitment offense had

been perpetrated in an especially cruel manner. (Pet. Ex. J at 72-73). The circumstances displayed a callous disregard for human suffering as Petitioner admitted that he knew the victim and had a prior relationship with the victim. *See* Pet. Ex. J at 40; *see also* Cal. Code Regs., tit. 15, §§ 2402(c)(1)(D). Furthermore, the statement of facts, read at the parol hearing, reveals that Petitioner continued to shoot at the victim after the victim had retreated. (Pet. Ex. J at 10). Additionally, the motivation for the crime was trivial in relation to the offense as Petitioner admitted during the parole board hearing that the crime occurred as a result of an argument over a ten dollar drug deal. *See* Pet. Ex. J at 11-12; *see also* Cal. Code Regs., tit. 15, §§ 2402(c)(1)(E). The BPH also found that Petitioner had a pre-commitment history of assaultive behavior based on his juvenile arrest record and his recount of those incidents. Pet. Ex. J at 22-25, 74-75; *see also* Cal. Code Regs., tit. 15, § 2402(c)(2)

Consistent with Lawrence, the BPH found that the circumstances of the commitment offense, when combined with Petitioner's inconsistent account of the crime and his insufficient participation in self-help or therapy programs, supported a finding that Petitioner posed a current risk of danger to the public. The Board emphasized that their main concern regarding the commitment offense was Petitioner's failure to come to terms with the crime, leading the BPH to conclude that there was a risk of Petitioner committing a similar crime if released. The BPH specifically stated that:

> Our concerns are–really are around the crime. It seems to me that you haven't fully explored the facts of the crime. As I was discussing with you earlier, it is important for you to remember them yourself and to be in a position to be able to discuss them, and have the facts be the same...What's important about that is that if you don't understand what you did, even though we know it was fast and it was brief, but if you don't understand what got you there and why you didn't just turn around and walk away or prevent it from happening, then you are at risk for having it happen again.

(Pet. Ex. J at 76-77)

At the parole hearing, Petitioner's provided a recount of the circumstances surrounding the commitment offense that was inconsistent with the probation report and with previous accounts Petitioner himself had given. The discrepancies included how long Petitioner had possessed the firearm used in the murder (Pet. Ex. J at 49-52); whether the victim ran behind a car before the Petitioner shot him a second time (Pet. Ex. J at 59-60); and whether the Petitioner verbally threatened the victim immediately prior to shooting at the victim (Pet. Ex. J at 62-63). Petitioner himself acknowledged that "my words look different, strange." (Id. at 68). These inconsistencies

lead the BPH to conclude that Petitioner had not fully dealt with what had happened and state that, "[i]t's an important step that we don't think you've really quite completed." (Id. at 77).

The evidence taken as a whole is sufficient to show that it is not unreasonable for a court to conclude that there was "some evidence" supporting the Board's determination that Petitioner posed an unreasonable risk of danger to society if released from prison. *See* Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability").

Petitioner additionally alleges that the Board intentionally misconstrued positive post-commitment factors–specifically objecting to the BPH's characterization of Dr. Walker's report and Petitioner's participation in self-help or therapy programs as grounds for denying parole. The Board, in citing Dr. Walker's report as one of several grounds for its decision, noted that the report was "not totally supportive of release in that he states that risk assessment measures suggest that the inmate poses a low to moderately low likely hood to become involved in a violent offense if released to the free community." (Pet. Ex. J. At 75). An examination of Dr. Walker's report shows that the Board was correct in asserting that Petitioner was assessed as a posing "low to moderately low likelihood to become involved in a violent offense." (Pet. Ex. F at 11). Petitioner's claim then is that the Board incorrectly weighed such evidence in reaching their decision. Moreover, "[t]he requirements of due process are satisfied if some evidence supports the decision...Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or *weighing of the evidence*." Hill, 472 U.S. at 455 (emphasis added).   As discussed above "some evidence" supports the Board's finding that Petitioner posed an unreasonable risk of danger to the public safety.   Consequently, Petitioner's right to due process of the law was not violated when the Board denied Petitioner parole.

**B.     Ground Two**

Petitioner further alleges that his right to equal protection of the law has been violated, claiming that since other similarly situated prisoners have been released the Board's denial of his parole was arbitrary and irrational. However, a prima facie case of discrimination requires more than an allegation that other prisoners have received more lenient sentences. McQueary v. Blodgett, 924

1  F.2d 829, 835 (9th Cir. 1991); *see also* McGinnis v. Royster, 410 U.S. 263 (1973) (applying rational
2  basis test to uphold New York statute denying certain prisoner's good time-credit for parole
3  eligibility). "[A] mere demonstration of inequality is not enough; the Constitution does not require
4  identical treatment.  There must be an allegation of invidiousness or illegitimacy...before a
5  cognizable claim arises." McQueary, 924 F.2d at 835.

6      Petitioner does not allege that there was invidiousness in this case, merely that he was treated
7  differently from other prisoners, who were granted parole.  Consequently, Petitioner has failed to
8  state a cognizable equal protection claim.

9  **RECOMMENDATION**

10      Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be
11  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for
12  Respondent.

13      This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United
14  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304
15  of the Local Rules of Practice for the United States District Court, Eastern District of California.
16  Within thirty (30) days after being served with a copy, any party may file written objections with the
17  court and serve a copy on all parties.  Such a document should be captioned "Objections to
18  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
19  filed within ten (10) court days (plus three days if served by mail) after service of the objections.
20  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)©.  The
21  parties are advised that failure to file objections within the specified time may waive the right to
22  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24  IT IS SO ORDERED.

25  **Dated:      September 29, 2008              /s/ John M. Dixon**
                                     UNITED STATES MAGISTRATE JUDGE
26

27

28